Annie Laurie KEYES, Appellant,

v.

LENOIR RHYNE COLLEGE, a non-profit corporation, et al., Appellees.

No. 76–1134.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 6, 1976.

Decided March 31, 1977.

J. Levonne Chambers, Charlotte, N. C. (Chambers, Stein, Ferguson & Becton, Charlotte, N. C., on brief), for appellant.

W. Gene Sigmon, Newton, N. C. (Jesse C. Sigmon, Jr., Sigmon & Sigmon, Newton, N. C., George M. Chapman, Charlotte, N. C., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, CRAVEN, Circuit Judge, and FIELD, Senior Circuit Judge.

FIELD, Senior Circuit Judge:

The plaintiff, Dr. Annie Laurie Keyes, filed this action against Lenoir Rhyne College, its President and the Chairman of its Board of Trustees, seeking injunctive, declaratory and pecuniary relief for herself and female faculty members of the College for alleged discrimination in employment opportunities because of their sex and age.[1] The action was based upon Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and the Fourteenth Amendment of the Federal Constitution.[2] Under the theory of pendent jurisdiction, Dr. Keyes also sought damages for breach of contract under the law of North Carolina. Following a lengthy trial the district judge filed a memorandum decision in which he made findings of fact based upon a detailed and thorough analysis of the

---

1. The district court determined that the case should be maintained as a class action on behalf "of past, present and future female faculty who have been, who are presently, and who in the future may be adversely affected by any discriminatory employment practices based upon sex."

2. Shortly prior to trial the district court granted the plaintiff's motion to amend the complaint to set forth a claim under the Equal Pay Act of 1963, 29 U.S.C. § 206(d).

evidence presented, and concluded that neither the plaintiff nor her class was entitled to relief. The plaintiff has appealed.

Dr. Keyes had previously been employed by the College from 1945 to 1949 as an associate professor, but had resigned to accept employment with the United States Department of Health, Education and Welfare. She was reemployed by the College in 1968 at which time she was sixty years of age. In 1969 the Board of Trustees of the College reduced the retirement age of all personnel, including faculty members, from sixty-eight to sixty-five and gave written notice of such change to the faculty and other employees. The Board elected to continue its policy of authorizing extensions of service beyond the retirement age on an individual basis when approved by a special vote of the Board. Dr. Keyes reached the age of sixty-five during the 1972–73 school year and on March 31, 1972, was notified that her employment would be terminated at the conclusion of the 1972–73 academic year.

The plaintiff's request that she be permitted to teach beyond her retirement age was denied by the administration and she appealed that decision to the Board of Trustees. Following a full hearing the Board affirmed the decision of the administration and denied Dr. Keyes' request for an extension. After being notified of the Board's decision, the plaintiff filed charges with the Department of Labor as well as the Equal Employment Opportunity Commission. No action was taken by either of these agencies, and after receipt of her ninety day letter from the EEOC the plaintiff instituted this action.

[1] Lenoir Rhyne College is a private institution with an average student enrollment of 1300 and a relatively small administrative staff and faculty, the total faculty numbering about ninety people. The evidence indicated that between the years 1966 and 1974 the percentage of women on the faculty at Lenoir Rhyne varied from twenty-eight percent to thirty-four percent. This was considerably higher than the national average for colleges and universities which during the 1972–73 academic year was some twenty percent. While the evidence revealed that the average male faculty salary was higher than that of females, there was no showing of any salary differential for teaching positions which were substantially equal, and in presenting her statistical evidence, the plaintiff made no comparison of salaries discipline by discipline or department by department. The district court found that the plaintiff had failed to establish a prima facia case by her statistical evidence and concluded that, in any event, the College had presented clear and convincing evidence to explain any disparity in salary between males and females, demonstrating that such differentials were based upon legitimate, reasonable and non-discriminatory factors.[3] Our review of the record persuades us that these findings of the district court were not clearly erroneous.

During the course of discovery, the plaintiff requested the production of certain records and documents, including copies of the plaintiff's personnel records, the personnel records of current faculty members, together with reports, records and correspondence dealing with the Government's investigation of sex discrimination by the College. The court ordered the disclosure of certain information with respect to all faculty members for the period from September 1, 1966, through the 1973–74 academic year. This information included the name or an identifying number of each faculty member during that period with pertinent data rela-

3. On the retirement issue the record showed that since 1966 eleven faculty members had been permitted to teach beyond the stated retirement age. During that period three females were granted such an extension and only one, Dr. Keyes, was denied such a privilege. During that same period eight male faculty members were granted such an extension and three were denied. We agree with the district court that these statistics do not suggest that sex discrimination played any part in the grant or denial of such extensions. Dr. Keyes presented no other evidence that the decision of the Board in denying her an extension was based on her sex.

tive to sex, tenure, status, annual salary and department position.[4]

█ Pursuant to the court's order the College also produced copies of all correspondence, memoranda and reports which had been forwarded to the Department of Labor, the Department of Justice, the Department of Health, Education and Welfare, and the Equal Employment Opportunity Commission. The court, however, declined to order the production of the confidential evaluations of each faculty member which had been made annually by the Division and Department Chairmen commencing with the 1970–71 school year. The plaintiff challenges this action of the court, contending that it precluded her from discovering evidence which would show that the defendants' explanations for certain male-female variances in salaries and promotions were pretextual.

Under Rule 26(c) of the Federal Rules of Civil Procedure, the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense *   *   *," and the scope of such an order lies within the discretion of the trial judge and will be reversed only if there is an abuse of that discretion. *Galella v. Onassis*, 487 F.2d 986 (2 Cir. 1973); *General Dynamics Corp. v. Selb Manufacturing Co.*, 481 F.2d 1204 (8 Cir. 1973); 8 Wright & Miller, Federal Practice and Procedure, § 2036 (1970). In the present case the College asked that the confidentiality of the faculty evaluation records be protected, urging that the assurance of confidentiality enabled the College to receive honest and candid appraisals of the abilities of the faculty members by their peers. It was, of course, necessary for the court to balance this interest of the College against the need of the plaintiff for such material,[5] and if the College had sought to justify any male-female disparity on the basis of these evaluations the plaintiff should have been granted the opportunity to use them to demonstrate that the explanation was pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Here, however, the College did not resort to the evaluations for that purpose,[6] and in the absence of some further showing on the part of the plaintiff, the district court's decision to protect these records from disclosure was not an abuse of its discretion.

Discerning no error of fact or law, we affirm the judgment of the district court.

AFFIRMED.

CRAVEN, Circuit Judge, dissenting:

I think the statistical evidence establishes a pattern, practice, or custom of discrimination based on sex against female faculty members with respect to compensation, and that the defendants are shown by such evidence to have denied equal pay to female faculty members for the same or similar work performed by male faculty members.

---

4. Specifically, the College furnished the following information:

1. The name or identifying number of every faculty member.
2. The sex of each faculty member.
3. The degrees earned and dates of each degree of every faculty member.
4. The date of employment at Lenoir Rhyne College.
5. The present rank of the faculty members.
6. The tenure status of the faculty members.
7. The dates of promotion in rank of faculty members including the date tenure was granted.
8. The annual earning or salary of every faculty member.
9. The annual committee appointments of every faculty member.
10. The annual department position held by every faculty member.
11. All special recognitions and honors of every faculty member with dates.

5. *General Dynamics Corp. v. Selb Manufacturing Co.*, 481 F.2d 1204, 1212 (8 Cir. 1973).

6. Such evaluations are necessarily judgmental, and had the College seen fit to rely upon them we would be faced with the delicate question of whether he court should "substitute its judgment for the rational and well-considered judgment of those possessing expertise in the field." *Green v. Board of Regents of Texas Tech University*, 335 F.Supp. 249, 250 (N.D. Tex.1971), aff'd 474 F.2d 594 (5 Cir. 1973). *See Faro v. New York University*, 502 F.2d 1229 (2 Cir. 1974).

The advisory jury so found, and I think the district judge abused his discretion in disregarding the advice of the jury.

In the 1972-73 school year, Professor Keyes (the plaintiff) was the lowest paid full professor on the faculty, receiving a salary of $12,134, yet her objective point total (which took into consideration degree, rank, experience and merit) ranked her tenth out of 16. The second highest paid professor was a male whose point score was lower than Mrs. Keyes. These comparisons, although disparate on their face, are admittedly not of compelling significance because they include all of the College's professors and are not broken down departmentally.

The record does, however, contain a comparison of salaries within the departments —Plaintiff's Exhibit 13a, "Confidential Salary Information." Within the Education Department of which Mrs. Keyes was a member, it appears that Mrs. Keyes, who was a full professor, received in 1968–69 a salary of $9,450, whereas male professor Schwarzbek received a salary of $10,206 although he was an associate professor and nontenured and she was a full professor and tenured. The documentary evidence for the Education Department also shows that Mr. Wiener was paid $12,015 when Mrs. Keyes received $11,667, although Mr. Wiener was a nontenured assistant professor and Mrs. Keyes was a tenured full professor.

In the Mathematics Department it appears that Mrs. Hawn received a salary of $9,129 and Mr. Smith a salary of $10,438, although they were of the same rank and Mr. Smith was nontenured and Mrs. Hawn was tenured.

In the English Department Mrs. Swink was paid $6,606 and Mr. Mahan was paid $8,865, although both were of the same rank and nontenured. Also in the English Department Mr. Whitesides was paid $7,695 and Mrs. Jeffers, $5,895, although she was tenured and he was not and they were of the same rank.

Despite this statistical showing, my brothers conclude, as did the district judge, that the College "presented clear and convincing evidence to explain any disparity in salary between males and females, demonstrating that such differentials were based upon legitimate, reasonable and nondiscriminatory factors." But they point to no such factors (except with respect to the question of whether there was discrimination in being permitted to teach beyond the stated retirement age). Nor can I find in the district court opinion precisely what factors are different that objectively account for pay disparity within departments.

I agree that even within the same department there may be legitimate salary variances and that college administrators may properly take into account the differences of quality in education and in prior teaching experience and other qualitative factors. But the College made no showing below to account for the disparity of pay in the examples I have set forth hereinabove. The record shows, for example, that when asked to explain the difference between the salaries of a man and a woman within the same department, Dr. Bost, the College's president, responded that he could not say precisely what accounted for the woman's lower salary. (App. at 663). He was the only witness who attempted to explain the disparities shown by Exhibit 13a.

It is clear that a plaintiff in a case such as this may establish a prima facie case by statistical evidence. *Barnett v. W. T. Grant Co.*, 518 F.2d 543 (4th Cir. 1975). It is also clear to me that the plaintiff here has done so and that the College has failed to satisfactorily explain the disparity in salaries within departments as between males and females.

I would reverse with an instruction to accept the verdict of the advisory jury.