Laura JEPSEN, Plaintiff-Appellant,

v.

**FLORIDA BOARD OF REGENTS et al.,**
**Defendants-Appellees.**

No. 77–2969.

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1980.

Kent Spriggs, Tallahassee, Fla., for plaintiff-appellant.

Gene T. Sellers, Counsel, State of Florida Bd. of Educ., Tallahassee, Fla., James D. Little, General Counsel, Florida Board of Education, Tallahassee, Fla., Gerald B. Jaski, Charles S. Ruberg, Tallahassee, Fla., for defendants-appellees.

Before TUTTLE, FAY and THOMAS A. CLARK, Circuit Judges.

TUTTLE, Circuit Judge:

The appellant, an associate professor at Florida State University, filed suit under Title VII, 42 U.S.C. § 2000e et seq., against the Florida Board of Regents, claiming that the University had discriminated against her on the basis of her sex. She appeals from an order of the district court dismissing the case. We reverse and remand.

Laura Jepsen is employed as an associate professor in the Department of English at the Florida State University, a state institution. She holds a B.A. degree, an M.A. degree, and a Ph.D. degree, which she received in 1946. Dr. Jepsen has written one book, published in 1953 and reprinted in 1971, which was apparently well-received in the academic community. She has also published several articles. Dr. Jepsen was first employed by the University in 1946 as an instructor. In 1947, she was promoted to the rank of assistant professor, a position she held until 1971 when she was promoted to associate professor. Dr. Jepsen has never been promoted to the rank of full professor, and, at the time this suit was filed, she was receiving a salary of $13,905 for a nine-month academic year.

During the time that Dr. Jepsen has been employed by the University, three categories have been considered in granting promotions and salary increases to faculty members—teaching, research, and service. Until 1970, a professor's performance in these areas was evaluated by the head of the department, or by an evaluation committee, based upon informal, unwritten criteria. Since 1970, the English Department has relied upon a more specific written set of guidelines in determining a professor's eligibility for promotion or a raise. An elected committee of the department evaluates a professor in each of the three categories, based on a point ranking system. The highest raise goes to the professor in the department with the highest number of points, and the lowest raise goes to the person ranked with the lowest number of points. The promotion system involves evaluation at four different levels. A professor must be recommended for promotion by a departmental committee, an area committee, a college committee, and a University-wide committee.

In 1974, Dr. Jepsen brought suit against members of the Florida Board of Regents,

claiming that the defendants had discriminated against her on the basis of sex, in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, as amended by the Equal Opportunity Act of 1972, Pub.L.No. 92–261, 86 Stat. 103. She alleged that the University has discriminated against her, on the basis of sex, in decisions regarding promotion and salary increases. She also claimed that the defendants were guilty of discrimination prior to 1972, the year in which Title VII was amended to apply to governmental entities. According to Dr. Jepsen, she was restricted to the position of assistant professor for twenty-five years, while a male professor with the same qualifications would have been promoted after five or six years. Although pre-1972 discrimination by a University is not actionable under Title VII, Dr. Jepsen maintained that the earlier failure to promote her has a present discriminatory effect, which the University has failed to correct, on her eligibility for promotion to full professor and on her present salary level.

Prior to trial, Dr. Jepsen filed a motion to compel discovery, requesting that the court order the University to produce the personnel files of fourteen members of the English Department. The defendants requested a protective order based on the confidentiality of these files under § 239.78 of the Florida Statutes.[1] Accordingly, the district court ordered that the plaintiff's counsel could personally view faculty evaluation forms, but could not copy the documents or discuss their contents with anyone other than the custodians of the documents, defense counsel, or the Court.

The case was tried on June 7 and 8, 1976. In the hearing before the district court, Dr.

Jepsen sought to introduce evidence of discrimination by the University from 1946 to the present. The district court agreed that, although liability was limited to the post-Act period, evidence of pre-Act discrimination was admissible to show that the plaintiff is presently being discriminated against by the defendant's failure to correct past acts of discrimination. Nonetheless, the court limited evidence of pre-Act discrimination to events occurring between 1964 and 1972.

The court entered its order on April 4, 1977, dismissing the action with prejudice. The district court noted, at the outset of its opinion, that a federal court should seek to preserve the separation of the state and federal systems, and stated:

It would require extremely compelling circumstances for this court to undertake to dictate the administrative policy of a state agency, or to sit as a court of appeals and review decisions of administrative officials. *Absent a clear abuse of discretion*, it is not the function of this court to substitute its judgment for that of the officials involved. (emphasis added).

The court stated that a claim of discrimination by a faculty member against a University is "different and much more complex" than a claim against a factory or union, since there will invariably be some subjectivity in evaluating professors. As to post-Act discrimination, the court found that the ratings given Dr. Jepsen were based upon her performance rather than her sex, and that she was judged by the same standards as male faculty members. As to the claim of uncorrected pre-Act discrimination, the court again held that the decisions were

1. That statute provides:

Regulations of the Board of Regents may prescribe the content and custody of limited access records which an institution in the State University System may maintain on its employees. Such records shall be limited to information reflecting evaluations of employee performance and shall be open to inspection only by the employee and by officials of the institution who are responsible for supervision of the employee. Except as required for use by the president in the discharge of his official responsibilities, the custodian of limited access employee records may release information from such records only upon such authorization, in writing, from the employee or upon order from a court of competent jurisdiction.

Fla.Stat.Ann. § 239.78 (West 1977).

based on merit. The court refused to substitute its judgment for that of Dr. Jepsen's peers, and stated, "There has been no showing of an abuse of discretion here, and absent such a showing, the decisions as to Dr. Jepsen's qualification for promotion will stand." To support its decision, the court cited *Green v. Board of Regents*, 474 F.2d 594 (5th Cir. 1973), a § 1983 suit in which the court applied an "abuse of discretion" standard.

Dr. Jepsen claims that the district court erred by applying an incorrect standard of proof, by limiting evidence of pre-Act discrimination to events occurring after 1964, and by unduly restricting her use of faculty evaluation forms.

## BURDEN OF PROOF

In considering the evidence presented at trial, the district court imposed upon the plaintiff a more stringent burden of proof than that applicable in Title VII cases. The court noted initially that decisions of University officials were not to be reversed absent "a clear abuse of discretion;" after considering the evidence, the court dismissed the case, finding no abuse of discretion.

 The burden of proof to be applied in a Title VII case was enunciated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 668 (1972). The complainant initially has the burden of establishing a prima facie case of discrimination. Once this is done, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. If the defendant meets this burden, the complainant then has the burden of proving that the defendant's articulated reasons were in fact a pretext for discrimination. *Id.* at 802–03, 93 S.Ct. 1817; *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 575, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1977). Our Court has applied this standard, and has stated that "the ultimate burden of persuasion by a preponderance of

the evidence" rests on the plaintiff. *Causey v. Ford Motor Co.,* 516 F.2d 416, 420 n. 6 (5th Cir. 1975).

That this same standard is to be applied in Title VII suits brought against universities is apparent from the Supreme Court's discussion in *Board of Trustees v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978), a case involving a factual situation very similar to the instant case. Dr. Christine Sweeney filed suit against the Board of Trustees of Keene State College, claiming that the school had discriminated against her on the basis of sex by failing to promote her. The court of appeals noted that courts had seemed reluctant to review salary, promotion, and hiring decisions of colleges and universities:

> This reluctance no doubt arises from the courts' recognition that hiring, promotion, and tenure decisions require subjective evaluation most appropriately made by persons thoroughly familiar with the academic setting. Nevertheless, we caution against permitting abdication of a responsibility entrusted to the courts by Congress. That responsibility is simply to provide a form for the litigation of complaints of sex discrimination in institutions of higher learning as readily as for other Title VII suits. [footnotes omitted.]

*Sweeney v. Board of Trustees*, 569 F.2d 169, 176 (1st Cir.), *vacated and remanded*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). The court then went on to analyze the evidence in terms of the burden of proof established in *McDonnell Douglas*, 569 F.2d at 176–80. The Supreme Court later vacated the decision, holding that certain language in the decision had increased the defendant's burden under the *McDonnell Douglas* standard. *Board of Trustees v. Sweeney*, 439 U.S. at 24–25, 99 S.Ct. 295. In so doing, the Court expressly sanctioned the use of the *McDonnell Douglas* standards in Title VII cases against universities. Following remand to the First Circuit and the district court, the latter reaffirmed its judgment for Sweeney by applying the proper

standard. This judgment was affirmed by the Court of Appeals, 604 F.2d 106 (1st Cir. 1979).

By requiring that Dr. Jepsen prove an "abuse of discretion" by the university, the district court has placed upon her a much greater burden than that approved by the Supreme Court as applicable in Title VII cases.[2] *See Lightfoot v. Board of Trustees*, 457 F.Supp. 135, 139–40 (D.Md. 1978). *Green v. Board of Regents*, 474 F.2d 594 (5th Cir. 1973), on which the district court relied, is not controlling. In that case, this Court found that a university had not "abused its discretion" in its decision not to promote the plaintiff. That case, however, was brought under 42 U.S.C. § 1983, and did not involve the standards applicable in a Title VII case. *Id.* at 595–96. The other Fifth Circuit cases cited by the defendant also involve suits brought on bases other than Title VII. *See Bowling v. Scott*, 587 F.2d 229, 230 (5th Cir. 1979) (plaintiff alleged due process violations); *Viverette v. Lurleen B. Wallace State Junior College*, 587 F.2d 191, 193 (5th Cir. 1979) (same).[3] We agree with the courts of appeal for the First and Second Circuits that caution against intervention in a university's affairs cannot be allowed to undercut the explicit legislative intent of Title VII. *See Powell v. Syracuse University*, 580 F.2d 1150, 1153–54 (2d Cir.), *cert. denied*, 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978); *Sweeney v. Board of Trustees*, 569 F.2d at 176.

## PRE–ACT DISCRIMINATION

Dr. Jepsen also contends that the trial court should have admitted evidence of discriminatory practices by the university between 1946 and 1964. She claims that the University failed to promote her to the position of associate professor for twenty-five years, whereas a male professor with the same qualifications would have been promoted after five or six years as an assistant professor. She contends that, because of the interaction of this discrimination and present policies, she is locked into a lower position and salary than similarly qualified males, and that the university has failed to correct the perpetuation of its past discrimination.

Evidence of pre-Act discrimination is admissible to prove that facially neutral policies and practices have operated to continue the effects of past discrimination. *United States v. Jacksonville Terminal Co.*,

---

**2.** Prior to the *Sweeney* decision, some courts had expressed an attitude of deference to the decisions of universities in hiring and promotional matters, even in Title VII suits. A decision which apparently influenced a number of district courts in this direction was *Faro v. New York University*, 502 F.2d 1229 (2d Cir. 1974), in which the court stated that "faculty appointments at a University level are probably the least suited for federal court supervision." *Id.* at 1231–32. Some federal district courts relied on this decision, as did the district court in this case, to apply a more lenient standard in Title VII cases involving universities. *See United States v. University of Maryland*, 438 F.Supp. 742 (D.Md.1977); *Johnson v. University of Pittsburgh*, 435 F.Supp. 1328 (S.D.Pa.1977); *Cussler v. University of Maryland*, 430 F.Supp. 602 (D.Md.1977); *Labat v. Board of Higher Education*, 401 F.Supp. 753 (S.D.N.Y.1975). Since the *Sweeney* decision, however, the Court of Appeals for the Second Circuit has restated its position, explaining that its decision in *Faro* "has been pressed beyond all reasonable limits," *Powell v. Syracuse University*, 580 F.2d 1150 (2d Cir.), *cert. denied*, 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978), and agreeing that the *McDonnell Douglas* standard is the appropriate standard to be used. *Id.* at 1154.

**3.** The majority of cases citing and approving *Green* have not been Title VII suits. *See, e. g., Stebbins v. Weaver*, 537 F.2d 939, 941 (7th Cir. 1976) (suit under 42 U.S.C. § 1983), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977); *Duke v. North Texas State University*, 469 F.2d 829, 831–32 (5th Cir.) (suit under 42 U.S.C. §§ 1981 and 1983), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2760, 37 L.Ed.2d 160 (1973); *McCormick v. Attala County Board of Education*, 407 F.Supp. 586, 588 (N.D.Miss.) (§ 1983 action), *vacated*, 541 F.2d 1094 (5th Cir. 1976); *Bottcher v. State of Florida Department of Agriculture and Consumer Services*, 361 F.Supp. 1123, 1124 (N.D.Fla.1973) (§ 1983 action), *affirmed*, 503 F.2d 1401 (5th Cir. 1974).

451 F.2d 418, 438 (5th Cir. 1971), *cert. denied*, 406 U.S. 906, 92 S.Ct. 1607, 31 L.Ed.2d 815 (1972). Although the district court recognized this principle, it limited the plaintiff to proof of discriminatory acts occurring after 1964. In so doing, the court denied the plaintiff an opportunity to present evidence relevant to her claim. What constitutes a reasonable period of time for purposes of pre-Act evidence will depend upon the unique facts presented in each case. The court stated in *Jacksonville* that, even though the time span between the pre-Act conduct and the trial may be great, the plaintiff's contention that the conduct and present discrimination are causally connected deserves serious consideration. 451 F.2d at 440 (evidence of agreements made in the 1930s should have been considered). In *Dobbins v. Local 212*, 292 F.Supp. 413 (S.D. Ohio 1968), on which the district court relied, six years before the effective date of the Act was an appropriate cut-off date for discovery. In view of the infrequency of promotions in the course of an academic career, however, the eight year limit imposed by the court excludes proof highly relevant to the plaintiff's claim.

## USE OF FACULTY EVALUATION FORMS

Dr. Jepsen also contends that the district court unreasonably limited her access to faculty evaluation forms crucial to her case. On April 7, 1976, the plaintiff moved to compel production of the English department's faculty evaluation forms of fourteen professors. The university sought to protect the records from discovery and from being introduced into evidence on the basis of a Florida statute which provides for limited access to certain documents maintained by state universities on their employees. *See* Fla.Stat.Ann. § 239.78 (West 1977), *supra*. The court ordered that Dr. Jepsen's attorney be allowed to view any of the fourteen faculty evaluation forms containing an evaluation of less than satisfactory,

but stated that he would not be allowed to copy any of the documents.

■ A district court clearly has the power to order production of limited access records. *See Carr v. Monroe Manufacturing Co.*, 431 F.2d 384, 390 (5th Cir.), *cert. denied*, 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1970). Furthermore, the confidentiality statute allows the custodian to release the records "upon order of a court of competent jurisdiction." Fla.Stat.Ann. § 239.78 (West 1977), *supra*. When a conflict such as this arises, the trial court must weigh the potential harm from disclosure of privileged communications against the benefits of disclosure. Of course, when a trial court orders production of confidential records, it has a duty to limit the availability and use of the documents by carefully drawn protective provisions.

■ In *Keyes v. Lenoir Rhyne College*, 552 F.2d 579 (4th Cir.), *cert. denied*, 434 U.S. 904, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977), the plaintiff, a female faculty member, requested production of faculty personnel records. The district court refused to order production of confidential faculty evaluations. The court of appeals, balancing the college's interest in confidentiality against the plaintiff's need for evidence, agreed with the trial court, since the College had not relied on the evaluations to justify its actions. The court then stated that "if the College had sought to justify any male-female disparity on the basis of these evaluations the plaintiff should have been granted the opportunity to use them to demonstrate that the explanation was pretextual." 552 F.2d at 581. We find this reasoning to be persuasive where, as here, the university defends a claim of discrimination on the ground that promotional decisions were based solely on unbiased faculty evaluations which involved criteria unrelated to sex.

The district court was correct, of course, in its desire to protect the confidentiality of these records. We hold, however, that the

plaintiff should have been allowed to introduce these records into evidence. Any danger that the confidentiality of these records will be violated may be prevented by the entry of further protective orders.[4]

For the reasons stated above, we REVERSE and REMAND for proceedings not inconsistent with this opinion.

4. Dr. Jepsen has also urged that the district court erred in denying various motions—a motion for a continuance, a motion to reopen the case to admit newly discovered evidence, and a motion for a new trial. The purpose of each of these motions was to allow the plaintiff to introduce into evidence a recently completed Task Force Study concerning the salaries of women faculty members of Florida State University. We do not reach this argument, since the plaintiff will have an opportunity on remand to offer the study into evidence.