Barbara RUBIN, et al., Plaintiffs,

v.

REGENTS OF the UNIVERSITY OF
CALIFORNIA, et al., Defendants.

Carol L. Huffine, Plaintiff in
intervention.

No. C–81–1469 TEH.

United States District Court,
N.D. California.

June 23, 1986.

Carol Amyx, Berkeley, Cal., Hadassa K. Gilbert, Los Angeles, Cal., Robert Berg, San Francisco, Cal., for plaintiffs and plaintiff in intervention.

James E. Holst, Christine Helwick, David M. Birnbaum, Eric K. Behrens, University of California, Berkeley, Cal., John A. Reding, John L. Beers, Crosby, Heafey, Roach & May, Oakland, Cal., for defendants the Regents of the University of California, Ira Michael Heyman, James E. Vance, Jr.

## ORDER

THELTON E. HENDERSON, District Judge.

This case is before the court on defendants' motion for reconsideration of a discovery order. That March 13, 1986, Order required defendants to answer two interrogatories that may reveal the identity of a peer evaluator in the faculty appointment process. Additional briefing was filed on June 13, 1986, and the court took the matter under submission. After careful consideration of the arguments of the parties, good cause appearing, the court hereby denies the motion to reconsider for the following reasons.

## FACTUAL BACKGROUND

This case involves claims of sex discrimination against the University of California at Berkeley for failure to hire and promote women to the faculty. The particular issue

involved in this motion is whether plaintiffs are entitled to answers to interrogatories that ask whether a particular professor wrote a letter of recommendation for the male applicant who was appointed in lieu of one of the plaintiffs.

Professor Neitschmann was a professor in the Geography Department at the University of California when a position opened up. Jacqueline Desbarats (plaintiff in the consolidated case of *Desbarats v. Regents of the University of California*, C-86-0708 TEH) applied for the position but was rejected. Plaintiffs allege that at Neitschmann's direction, the description of the position was then changed to include "development studies." Plaintiffs further allege that the change was made to accommodate the application of Michael Watts, who had been Neitschmann's protégé at the University of Michigan.

Plaintiffs claim they have a particularized need to determine whether Neitschmann supplemented Watts' application with unsolicited letters he had written for Watts previously. Plaintiffs intend to show by this information that the University of California discriminates through a system of "old-boy-networking". In this case, Neitschmann was an "inside decision-maker", as a member of the Geography Department. However, he also allegedly submitted letters of reference in the guise of "outside" letters. Plaintiffs contend that these "ostensibly outside letters constitute irregularities in the decision-making process introduced by Mr. Nietschmann in order to benefit his male candidate at the expense of better qualified female ones." (Plaintiffs' Memorandum in Opposition to Defendants' Motion for Reconsideration at 16).

## LEGAL DISCUSSION

Defendants allege they have an "academic privilege" that permits them to avoid disclosing the identities of peer evaluators in the tenure review process. They have already conceded that they are obligated to provide redacted versions of the substance of letters of reference, but argue they should be allowed to cut out those parts that indicate the identity of the letter-writer. In this case, however, it is specifically the identity of the letter writer that the plaintiffs have requested.

The Circuit courts are currently split on whether or not an academic privilege exists, and, if so, to what degree universities can prevent disclosure where they are charged with discrimination. The Ninth Circuit has explicitly declined to decide whether peer evaluations are privileged, and, in particular, whether the identities of individual evaluators may be protected. *Lynn v. Regents of University of California*, 656 F.2d 1337, 1346 (9th Cir. 1981). Nevertheless, that court did speak approvingly of the balancing approach taken by other courts of appeals in which the courts balanced a university's interest in confidentiality with a Title VII plaintiff's need to prove discrimination. The court was particularly concerned that where a university says that a decision was based on peer evaluations, then the plaintiff's interest outweighs that of the university's. *Lynn*, 656 F.2d at 1347.

In addition, two recent cases in this district have addressed the issue of academic privilege and used *Lynn* as the basis for applying a balancing approach. *Paul v. Stanford University*, 39 E.P.D. ¶ 35,918 (N.D.Cal.1986) (Magistrate Brazil); *Zaustinsky v. University of California*, 96 F.R.D. 622, 625 (N.D.Cal.1983) (Judge Schwarzer). In *Zaustinsky*, Judge Schwarzer set out the following test:

> If it appears … that plaintiff can probably make a prima facie case, the defendant must disclose the reasons for its actions and supporting evidence. To the extent those reasons are based on materials in the University's files which it regards as confidential, some disclosure must then be required which is adequate to enable plaintiff to attempt to meet the burden of proving those reasons to be pretextual.

*Zaustinsky*, 96 F.R.D. at 625.

However, as the *Paul* court notes, *Zaustinsky* did not distinguish between the *sub-*

*stance* of the materials and the *identity* of the evaluators. In *Paul*, identity was at issue since defendants alleged that disclosure of the originals would be "tantamount to disclosure of the identities of the authors" because of the specific references contained in the letters. *Paul*, 39 E.P.D. at 41, 374. Nevertheless, *Paul* applied the same balancing test described in *Lynn* and *Zaustinsky* and decided that where a plaintiff can show she "can probably make a prima facie case," she is entitled to disclosure.[1]

Furthermore, the Second Circuit also adopted a balancing approach by weighing the need for disclosure against the institution's interest in confidentiality. *Gray v. Board of Higher Education*, 692 F.2d 901 (2d Cir.1982). Although that court was extremely solicitous of the constitutional aspect of academic freedom, the court nonetheless explained that "academic freedom is illusory when it does not protect faculty from censurious practices but rather serves as a veil for those who might act as censors." *Gray*, 692 F.2d at 909. Thus, the court ordered the disclosure of the votes of two specific committee members so that plaintiff could attempt to prove racial animus by those members. The court pointed out that academic freedom would not likely be chilled since discovery for purposes of a discrimination lawsuit would not be routine.

The Seventh Circuit, in its balancing approach, has been most protective of the academic community. As the court explained,

> The process of peer evaluations has evolved as the best and most reliable method of promoting academic excellence.... Without this assurance of confidentiality, academicians will be reluctant to offer candid and frank evaluations in the future.

*EEOC v. Univ. of Notre Dame du Lac*, 715 F.2d 331, 336 (7th Cir.1983).

Consequently, that court found a qualified academic privilege and denied disclosure of the identity of peer evaluators. However, the court did leave open the possibility that a plaintiff might show a "particularized need" for relevant information.

On the other hand, two Circuits have found *no* academic privilege. *EEOC v. Franklin & Marshall College*, 775 F.2d 110 (3d Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 2288, 90 L.Ed.2d 729 (1986), held that there was no academic privilege, but since the EEOC had already agreed to accept the materials with the identifying characteristics deleted, it did not have to reach the specific issue involved in this case. Even so, the Third Circuit was critical of the balancing approach "which permits colleges and universities to avoid a thorough investigation [and] allow the institutions to hide evidence of discrimination behind a wall of secrecy." *Franklin & Marshall*, 775 F.2d at 115.

In *In re Dinnan*, 661 F.2d 426 (5th Cir. 1981), the Fifth Circuit clearly held that there is no such privilege as an "academic privilege." The court then ordered a professor to disclose his vote concerning a tenure decision. In a well-developed opinion, the court explained its decision:

> Though we recognize the importance of academic freedom, we must recognize its limits. The public policy of the United States prohibits discrimination; Professor Dinnan and the University of Georgia are not above that policy. To rule otherwise would mean that the concept of academic freedom would give any institution of higher learning a *carte blanche* to practice discrimination of all types.

*In re Dinnan*, 661 F.2d at 431.

Moreover, the court also addressed the concern that disclosure would undermine the search for excellence in its destruction of confidentiality in the tenure decision-making process:

> We fail to see how, if a tenure committee is acting in good faith, our decision today

---

1. In *Lynn*, the court described the four elements of a prima facie case of Title VII discrimination by an institution of higher learning. Plaintiff must show: "1) that she is a member of a class protected by Title VII; 2) that she was qualified for the position or rank sought; 3) that she was denied promotion or reappointment; 4) that in cases of reappointment (or tenure) others (*i.e.*, males) with similar qualifications achieved the rank or position."

will adversely affect its decision-making process. This opinion should work to reinforce responsible decision-making in tenure questions as it sends out a clear signal to would-be wrongdoers that they may not hide behind "academic freedom" to avoid responsibility for their actions. *In re Dinnan,* 661 F.2d at 432.

In light of this guidance from other courts, although the Ninth Circuit has not decided the issue, this court will follow other cases from this district in which a balancing approach has been followed. Consequently, the defendants' motion to reconsider is denied for the following reasons:

■ First, the burden of establishing justification for a privilege is on the party who attempts to create or invoke it "because privileges generally operate to the disadvantage of the process of uncovering the truth." *Paul,* 39 E.P.D. at 41,370. In this case, there is not sufficient evidence to show a close link between confidentiality and the ability to find "excellent" professors. As the court points out in *Paul,*

> It can be non-laughably argued that reviewers who know that their identity might be disclosed will neither refuse to comment nor retreat into useless abstractions or disingenuous flattery, but, instead, will articulate their opinions, and describe the bases for them, with greater precision and better developed logic.

Second, plaintiffs allege that the letters that they are interested in were "unsolicited." That would mean that the university did *not* promise the writer confidentiality in order to obtain the letters. That fact undermines defendants' arguments about the crucial role promises of confidentiality play in the faculty selection process and for the particular requested material in this case.

Finally, to the extent the university does have an interest in confidentiality, plaintiffs' need for disclosure here outweighs that interest. Plaintiffs can "probably make out a prima facie case" of sex discrimination. Plaintiff is a member of a protected class; she appears qualified for the position sought, but was denied appointment where a man of allegedly similar qualifications received the appointment. As a result, plaintiffs intend to show discrimination by proof of the effects of the old-boy network. Alleged irregularities in the process resulted in the hiring of a male (who allegedly did not have the original expertise required) over a female (who allegedly did have the original expertise required). Those alleged irregularities could only be demonstrated through the identity of the evaluator, not by the substance of the evaluation. Thus, plaintiffs have shown a particularized need in this case for the identity of the evaluator.

Accordingly, the court finds that the plaintiff's need for the disclosure outweighs the university's interest in confidentiality in this case. Thus, IT IS HEREBY ORDERED that defendants' motion to reconsider this court's March 13, 1986, Order is DENIED.

In light of the fact that the Ninth Circuit has not yet ruled on this important issue, IT IS FURTHER ORDERED that this Order is stayed for 15 days to allow defendants time to seek review in the Ninth Circuit. If defendants appeal this Order, it will be stayed pending the appeal.

IT IS SO ORDERED.