**Mehdi PARVARANDEH, Plaintiff,**

**v.**

**J.L. GOINS, et al., Defendants.**

**Frank DARWIN, Plaintiff,**

**v.**

**J.L. GOINS, et al., Defendants.**

**Nos. CIV–3–86–335, CIV–3–86–492.**

United States District Court,
E.D. Tennessee, N.D.

Nov. 21, 1988.

Robert S. Olive, Sandra G. Olive, Knoxville, Tenn., for plaintiffs.

W.J. Michael Cody, Atty. Gen., Christine Modisher, Linda D. Walton, Asst. Attys. Gen., Nashville, Tenn., for State defendants.

Gary Wade, Sevierville, Tenn., for defendant, Michael Price.

### MEMORANDUM AND ORDERS

ROBERT P. MURRIAN, United States Magistrate.

These matters are before the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(a), Federal Rules of Civil Procedure, for disposition of the plaintiffs' motions to permit additional interrogatories [Doc. 115, Civ. 3–86–335; Doc. 95, Civ. 3–86–492]; to compel answers to discovery [Doc. 116, 3–86–335; Doc. 96, 3–86–492]; and to amend their respective complaints [Doc. 117, 3–86–335; Doc. 97, 3–86–492].[1]

---

**1.** All further references to document numbers herein will correspond to those in *Parvarandeh* *v. Goins,* Civ. 3–86–335.

## I.

Plaintiffs request leave of court to serve upon defendants interrogatories exceeding the prescribed number of interrogatories, LR 11.3, EDTN, due to the complexity of these cases [Doc. 115].

The defendants have not objected to the plaintiffs' requests.

Accordingly, good cause having been shown, it is hereby ORDERED that the plaintiffs' motions seeking leave to file interrogatories exceeding the number prescribed by LR 11.3, EDTN, but not to exceed 50 interrogatories, be, and same hereby are, GRANTED.

## II.

Plaintiffs move the court for an order requiring the defendants to answer deposition questions regarding discussions occurring during committee meetings pertaining to the promotion and tenure of plaintiffs [Doc. 116]. Specifically, plaintiffs seek to compel defendant Robert Mobely, the head of the department wherein plaintiff works, to relate discussions occurring during division meetings regarding plaintiffs' promotion and tenure. Plaintiffs contend that it is necessary for plaintiffs to explore fully the meetings in which the plaintiffs' applications for tenure and promotion were discussed to establish that an unlawful conspiracy existed among the defendants to deny plaintiffs' applications for tenure and promotion and to disprove the defendants' contention that untainted division, department, and institution recommendations produced in the subject meetings provided a proper basis for denying plaintiffs' promotion and tenure [see Doc. 116]. Plaintiffs submit affidavits stating that they were each told by defendant Goins that peer reviews played a role in rejecting plaintiffs' applications for tenure and promotion and that defendants Sweet, Mauer, and Mobely participated in those reviews [see Doc. 114 and affidavits attached thereto].

The defendants have responded to the plaintiffs' motions, contending that discussions during meetings of college tenure and promotion review committees are protected by a qualified academic freedom privilege and are, thus, not subject to discovery; that the United States Court of Appeals for the Seventh Circuit has recognized this privilege; that a plaintiff must make a "substantial" showing of "particularized need" to obtain anything beyond redacted versions of peer review files; that plaintiffs have been given access to their tenure review and promotion review files, to the names of the individuals who participated in the review process, and copies of plaintiffs' professional evaluations which were considered during their tenure and promotion reviews; and that plaintiffs have failed to make a substantial showing of "particularized need" for anything more than has already been produced [see Doc. 120].

The undersigned notes that since plaintiffs have already been provided their tenure review files, the only question before the undersigned is whether the *discussions* had at the tenure and promotion review committee meetings are subject to a "qualified academic freedom privilege." It is my opinion, however, that the case law governing the discoverability of tenure review files is equally applicable to discussions occurring at tenure review committee meetings since the purpose of shielding either from discovery is to protect open and frank evaluations and critiques of the professor(s) being evaluated.

The United States Courts of Appeals are currently split on the issue of whether an "academic freedom privilege" exists, and, if so, to what degree. *See Rubin v. Regents of the University of California*, 114 F.R.D. 1, 2 (N.D.Cal.1986); *Rollins v. Farris*, 108 F.R.D. 714, 716 (E.D.Ark.1985); *EEOC v. Franklin & Marshall College*, 775 F.2d 110, 113 (3rd Cir.1985), *cert. denied*, 476 U.S. 1163, 106 S.Ct. 2288 (1986). The United States Court of Appeals for the Second Circuit specifically declined to adopt any rule of privilege, *Gray v. Board of Higher Education, City of New York*, 692 F.2d 901, 904 (2d Cir.1982), and adopted the following balancing approach:

> Any finding that information is protected from discovery must reflect a balancing

between, on the one hand, the parties' right to discovery, which stems from society's interest in a full and fair adjudication of the issues involved in litigation and, on the other hand, the existence of a societal interest in protecting the confidentiality of certain disclosures made within the context of certain relationships of acknowledged social value.

*Gray,* 692 F.2d at 903, 904–905. In *Lynn v. Regents of the University of California,* 656 F.2d 1337 (9th Cir.1981), *cert. denied,* 459 U.S. 823, 103 S.Ct. 53, 74 L.Ed.2d 59 the United States Court of Appeals for the Ninth Circuit indicated in dictum that it approved of the balancing approach and stated that

> when evaluations serve as the alleged basis for the University's decision to deny tenure or promotion, the plaintiff's interest in proving his case outweighs the University's interest in protecting the confidentiality of a file and that in such cases the evaluations must be provided to the plaintiff.

*Id.* The United States District Court for the Northern District of California, however, specifically rejected the decisions finding an academic freedom privilege in favor of the balancing approach. *Rubin,* 114 F.R.D. at 4 (citing *Lynn, supra* ).

The United States Court of Appeals for the Fifth Circuit held that no academic freedom privilege exists, and that the discovery of tenure review proceedings depends only upon the relevance of same; and ordered a professor to disclose his vote concerning a tenure decision. *In re Dinnan,* 661 F.2d 426, 427, 429–32 (5th Cir. 1981), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2904, 73 L.Ed.2d 1314.

The United States Court of Appeals for the Seventh Circuit explicitly recognized a "qualified academic freedom privilege" protecting against the disclosure of the names and identities of persons participating in the peer review process. *EEOC v. University of Notre Dame Dulac,* 715 F.2d 331, 337 (7th Cir.1983), and noted that before even the redacted files would be ordered produced "there must be substance to the charging party's claim and thorough discovery conducted." *University of Notre Dame,* 715 F.2d at 337 n. 4. The court further held that before receiving additional information from unredacted files, the charging party must make "a substantial showing of particularized need." *Id.* at 338.

The United States Court of Appeals for the Third Circuit rejected the rule of privilege *and* the balancing approach in *EEOC v. Franklin and Marshall College,* 775 F.2d at 114. The third circuit held that

> [a] privilege or Second Circuit balancing approach which permits colleges and universities to avoid a thorough investigation would allow the institutions to hide evidence of discrimination behind a wall of secrecy.

*Franklin & Marshall,* 775 F.2d at 115. The only standard held applicable by the Third Circuit to a discovery request seeking sensitive peer review material is that of relevance, Rule 26(b)(1), Fed.R.Civ.P. *See, id.* at 116.

The United States Court of Appeals for the Sixth Circuit has not addressed the question regarding the privileged status of tenure review materials and discussions and the United States District Court for the Middle District of Tennessee avoided the issue as follows:

> The court need not decide in this case whether tenure review files are privileged (citations omitted) since even those courts which profess to recognize such a privilege require production of the files when the defendants rely upon the evaluations contained within them to justify their actions.

*Langland v. Vanderbilt University,* 589 F.Supp. 995, 1008 (M.D.Tenn.1984), *aff'd* 772 F.2d 907 (6th Cir.1985).

■ Courts do not favor creating new privileges because

> "privileges contravene the fundamental principle that 'the public has a right to every man's evidence' [citations omitted]." As such, they must be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the nor-

mally predominant principle of utilizing all rational means for ascertaining truth." [*Trammell v. United States*, 445 U.S. 40, 49, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980)]. [T]he Supreme Court has stated that "exceptions to the demand for every man's evidence *are not lightly created* nor expansively construed, for they are in derogation of the search for truth." [*United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974)].

*In re Dinnan*, 661 F.2d at 429–30 (emphasis added in 661 F.2d 426). *Cf. Rubin*, 114 F.R.D. at 4. However, the undersigned also recognizes that

> the peer review process is essential to the very lifeblood and heartbeat of academic excellence and plays a most vital role in the proper and efficient functioning of our nation's colleges and universities[,] [and that] [t]he process of peer evaluation has evolved as the best and most reliable method of promoting academic excellence and freedom by assuring that faculty tenure decisions will be made objectively on the basis of frank and unrestrained critiques and discussions of a candidate's academic qualifications.

*University of Notre Dame*, 715 F.2d at 336. The undersigned is, therefore, of the opinion that the United States Court of Appeals for the Sixth Circuit would find the approach taken by the Second Circuit to be the most appropriate, wherein the court refused to adopt a rule of absolute disclosure or a rule of complete privilege, and chose, instead, to balance the competing interests involved. *Gray*, 692 F.2d at 908. Utilizing the balancing approach, it has been held that

> confidential deliberations [are] discoverable if a plaintiff alleges that the tenure committee harbors a discriminatory animus against him and that this animus would be reflected in notes of the deliberations or votes taken. Similarly, if a defendant claims that the tenure denial was based on evaluations of a plaintiff's performance discussed at the tenure committee meetings, then certainly a

plaintiff will be hamstrung if denied disclosure.

*Rollins*, 108 F.R.D. at 719. *See generally*, 85 A.L.R.Fed. 691, § 2b. Although not on point, the undersigned finds the case of *Robinson v. Magovern*, 83 F.R.D. 79 (W.D. Pa.1979) instructive on the question before the undersigned. *Robinson* involved an action under the Sherman Anti–Trust Act by an open heart surgeon who contended, *inter alia*, that the defendants participated in a conspiracy to deny him hospital staff privileges. The plaintiff sought an order from the court compelling the defendant to respond to discovery requests and deposition questions which would reveal the substance of the deliberations of the subject hospital's peer review committee(s). The Court held that

> [t]he present case presents a very close question. On the one hand, peer review protection furthers an important state interest: improving health care. Specifically, we think the grant of confidentiality over the proceedings of hospital committees reviewing applications for staff privileges facilitates frank discussion of the applicant's qualifications. *On the other hand, the subject matter of the discovery goes to the heart of the issues in this case, i.e. why Robinson was denied staff privileges ....*
>
> \*    \*    \*    \*    \*    \*
>
> On the balance, although there is a "powerful interest in confidentiality", the need for this relevant evidence requires disclosure ....

*Robinson*, 83 F.R.D. at 88–89.

■ The plaintiffs have alleged in their amended complaints that defendants Sweet, Mobely, and Mauer, who comprised a part or all of the tenure review committee evaluating the plaintiffs' applications for tenure, participated in a conspiracy to deny plaintiffs' tenure and promotion because of a racial animus and that said defendants participated in a "comprehensive plan of discrimination ..." intended to exclude minority groups from favorable employment decisions [*see* Doc. 88]. Additionally, the plaintiffs' unopposed affidavits state that they have been told that their

peer reviews provided a basis for the decisions not to grant their applications for tenure [*see* affidavits attached to Doc. 114].

The undersigned finds that deposition questions regarding the discussions had at the subject peer review committee meetings go to the heart of this lawsuit (*i.e.*, why plaintiffs were denied tenure and promotion), *see Robinson,* 83 F.R.D. at 88–89; that plaintiffs claim that the tenure committee harbored a discriminatory animus against them, *see Rollins,* 108 F.R.D. at 719; that the defendants contend that plaintiffs were denied tenure based upon their peer/tenure reviews, *see id.;* and that, consequently, "the degree of infringement on the process of peer selection is 'outweighed both by the demands of fair employment as well as those of academic excellence and freedom.'" *Rollins,* 108 F.R.D. at 720 (quoting *Gray, supra*). The undersigned also finds that, in light of the extensive disclosures already made to plaintiffs regarding their peer/tenure reviews (*i.e.*, tenure review files, names of the individuals who participated in plaintiffs' reviews, and copies of plaintiffs' professional evaluations), State Technical Institute at Knoxville has a significantly reduced interest in preserving the confidentiality of discussions had at the plaintiffs' peer/tenure review committee meetings. *Cf. Lynn,* 656 F.2d at 1347–48 (case where plaintiff was trying to obtain her tenure review files, court noted that because plaintiff already had access to summaries of the comments of her evaluators, the names of her evaluators, letters written on her behalf to the committee and the minutes of the meeting of the tenure review committee, the University had only a minimal interest in preserving the confidentiality of her tenure review file).

For the reasons indicated, it is hereby ORDERED that the plaintiffs' motions to compel answers to deposition questions regarding discussions had at peer review committee meetings involving plaintiffs be, and same hereby are, GRANTED.

### III.

Plaintiffs move the court for an order granting them leave to amend their complaints to include claims for lost income and lost earning capacity since June, 1988, when plaintiffs were terminated from their employment [Doc. 117].

The defendants have not objected to the plaintiffs' motions.

Accordingly, it is hereby ORDERED that plaintiffs' motions to amend their complaints be, and same hereby are, GRANTED.

IT IS SO ORDERED.