81 F.3d 170
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Helen M. TITTEL, Plaintiff-Appellant,
v.
BROWNS VALLEY IRRIGATION DISTRICT, Al Cote, Diana Smith,
John Mistler, Robert Borsden and Ted Lamantia,
Defendants-Appellees.
Helen M. TITTEL, Plaintiff-Appellant,
v.
BROWNS VALLEY IRRIGATION DISTRICT, Al Cote, Diana Smith,
John Mistler, Robert Borsden and Ted Lamantia,
Defendants-Appellees.
Helen M. TITTEL, Plaintiff-Appellant,
v.
BROWNS VALLEY IRRIGATION DISTRICT, Al Cote, Diana Smith,
Robert Borsden, Pat Sperbeck, Neil Scott, and
Robert Winchester, Defendants-Appellees.
 Nos. 93-16971, 94-16562, 95-16085.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 15, 1996.
Decided March 25, 1996.
 
 Before: BOOCHEVER, HALL and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 These are three consolidated appeals regarding actions against the Browns Valley Irrigation District (District) and its board members (collectively Defendants) by Helen Tittel, a former employee of the District. In appeal No. 93-16971, Tittel appeals the district court's grant of summary judgment in favor of the Defendants on her federal and state claims arising from the Defendants' failure to grant her wage increases (Tittel I ). In appeal No. 94-16562, Tittel appeals the district court's grant of summary judgment in favor of the Defendants on her federal and state claims arising out of her dismissal from the District (Tittel II ). In appeal No. 95-16085, Tittel appeals the district court's imposition of attorneys' fees in favor of the Defendants. We affirm Tittel I and Tittel II, and reverse the award of attorneys' fees.
 
 1. Sexual Harassment
 
 3
 In order for Tittel to demonstrate a hostile work environment, she needs to show unwelcome conduct (including language) of a sexual nature which altered her employment conditions. See Ellison v. Brady, 924 F.2d 872, 875-76 (9th Cir.1991); see also Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir.1995). Even though it was undoubtedly unwelcome, the unsanitary bathroom does not reach the level of being sexual in nature. Cf. id. Also, the single stray comment ("bitch") made by a former board member many years ago came before many wage increases and was unconnected to the present situation. Viewing the evidence in the light most favorable to Tittel, she failed to demonstrate that the actions were sufficiently severe or pervasive to alter the conditions of her job.[1]
 
 2. Sex Discrimination
 
 4
 In a sex discrimination case, the plaintiff must first prove a prima facie case of discrimination, then the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the action, and finally the plaintiff has an opportunity to show that the defendant's reasons were pretexts. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253, 101 S.Ct. at 1093. See also St. Mary's Honor Center v. Hicks, --- U.S. ----, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).
 
 
 5
 Assuming that Tittel demonstrated a prima facie case of discrimination from the denial of her wage increase and from her termination, the Defendants have articulated nondiscriminatory reasons for their actions. Smith and Mistler stated that they voted against the wage increase because they were dissatisfied with Tittel's job performance. Their reasons were multitudinous and specific. Bordsen stated that he voted against the wage increase because he felt Tittel was adequately compensated given the nature of her job.[2] In his view, she was a clerk. Also, the Defendants provided a nondiscriminatory reason for her termination: her performance.
 
 
 6
 The Defendants gave nondiscriminatory reasons for their decision. Tittel then had to demonstrate that the Defendants' reasons were pretexts. See Burdine, 450 U.S. at 253, 101 S.Ct. at 1093. Tittel failed to make that showing. In fact, her statement that the Board was often critical of her job performance corroborates the reason given by Smith and Mistler. Thus, Tittel failed to demonstrate that there was a genuine issue of material fact regarding her claim of sex discrimination.
 
 
 7
 We, of course, recognize that a statement that the women (clerks) who worked for the county (or for Montgomery Ward) were not as well compensated as she can be seen as some evidence of discrimination. But that slight evidence standing alone, as it does, would be wholly insufficient to allow a reasonable juror to find in her favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).
 
 3. Due Process
 
 8
 "The Fourteenth Amendment protects against the deprivation of property or liberty without procedural due process." Brady v. Gebbie, 859 F.2d 1543, 1547 (9th Cir.1988), cert. denied, 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989). "A person 'only has a constitutionally protected property interest ... if [she] has a reasonable expectation or a "legitimate claim of entitlement" to it, rather than a mere "unilateral expectation." ' " Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 475 (9th Cir.1991) (quoting Brady, 859 F.2d at 1547-48).
 
 
 9
 Even when viewed in the light most favorable to her, Tittel failed to demonstrate a genuine issue of material fact regarding her due process claim. The Board's action clarifying that the wage increase only affected field workers was nothing more than a clerical correction. The record showed that the Board usually handled wage increases for field workers at times different from the time for wage increases for Tittel, as an office worker. Tittel failed to demonstrate that she had a right to that increase.
 
 
 10
 Tittel also did not have a property interest in maintaining her job. Under California law, "[e]very office, the term of which is not fixed by law, is held at the pleasure of the appointing power." See Cal.Gov't Code § 1301. Although "permanent employees" of the state civil-service system can only be dismissed for cause, see Cal.Gov't Code § 19996, the Board's employees are exempt from the provisions of the civil service statute. See Cal. Const. art. VII, § 4(e); Cal.Water Code § 21185.
 
 
 11
 Moreover, were there any doubt, it was removed when the Union contract was approved, which designated her as an at will employee and set forth procedures for termination and for grievances.
 
 4. First Amendment
 
 12
 To make a successful claim for wrongful retaliation under the first amendment and section 1983, the plaintiff must prove that: (1) the statement that brought on the retaliation is one of "public concern;" (2) the constitutionally protected expression is a "substantial" or "motivational" factor in the employer's adverse decision or conduct; and (3) the interests of the plaintiff/employee in commenting on the matter of public concern outweigh the state's interest in maintaining efficient public services.
 
 
 13
 Sanchez v. City of Santa Ana, 936 F.2d 1027, 1038 (9th Cir.1990), cert. denied, 502 U.S. 957, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991). "Employee expression that can be fairly considered as relating to a matter of political, social, or other concern to the community may be characterized as speech involving a matter of public concern." Voigt v. Savell, 70 F.3d 1552, 1559 (9th Cir.1995).
 
 
 14
 Tittel failed to demonstrate that her statements were of public concern, and therefore cannot make out a First Amendment violation. See id. (whether speech is constitutionally protected is threshold issue). Thus, there was no issue of material fact regarding her First Amendment claim.
 
 5. Other Claims
 
 15
 We have discussed what we see as Tittel's major claims. She has also made a host of other federal and state claims, all of which fail for the same basic reasons that undermine the ones already discussed. There simply is insufficient evidence to support them, no matter how inventive the pleader was. To put it briefly, she has shown no state or federal equal protection claim because those founder for the same reasons that her discrimination claims founder. She has shown no claim under 42 U.S.C. §§ 1985(3) and 1986 and no right to fees under § 1988. She has not shown any violation of the state equal wage statute. Cal.Lab.Code § 1197.5. Her job simply was not comparable to that of the other employees of the District. She has spelled out no other claim under the California Tort Claims Act because she failed to comply with its terms. See Cal.Gov't Code §§ 905, 910.[3] Finally, she has not shown that she is entitled to administrative mandamus; her petition was not even verified. See Cal.Civ.Proc.Code §§ 1069, 1086, 1094.6.
 
 6. Attorneys' Fees
 
 16
 The district court awarded attorneys fees against Tittel in Tittel II and did so under Cal.Civ.Proc.Code § 1038, which applies to tort claims brought against the district that were not maintained in good faith and with reasonable cause. The award principally flowed from the district court's determination that Tittel should have known that the decisions in Tittel I would collaterally estop her claims in Tittel II except as to her new due process at termination claim. That claim was barred by the provisions of the Water Code and by the union contract, and the court determined that Tittel should have known that it was.
 
 
 17
 We are sympathetic to the district court's determinations. See Clark v. Bear Stearns & Co., Inc., 966 F.2d 1318, 1320 (9th Cir.1992). Indeed, Tittel's assertion that a defendant can be subjected to trial after trial on the same facts if an inventive plaintiff can simply claim a new incident to add to the alleged old ones is jarring to say the least. Certainly it is novel. But cf. Bauman v. Block, 940 F.2d 1211, 1218 (9th Cir.), cert. denied, 502 U.S. 1005, 112 S.Ct. 640, 116 L.Ed.2d 658 (1991) (evidence of discrimination occurring outside an actionable time period may constitute relevant background evidence in determining present discriminatory action); Domingo v. New England Fish Co., 727 F.2d 1429, 1443 (9th Cir.) (per curiam), modified, 742 F.2d 520 (1984) (same).
 
 
 18
 However, our dissenting colleague is of the contrary opinion and is also satisfied that the due process at termination claim was weighty enough to have been reasonably brought. That being so, we cannot say that Tittel behaved unreasonably or in bad faith when she pursued her claims in Tittel II. Obviously they are reasonably arguable positions. Thus, we reverse the award of attorneys fees.
 
 7. Sanctions
 
 19
 Tittel's counsel, Maxim N. Bach, violated the Federal Rules of Appellate Procedure. We therefore issued an order directing him "to show cause why he should not be sanctioned for violating Fed.R.App.P. 28(a)(3) by failing to include a statement of the issues; for violating Fed.R.App.P. 28(a)(4) by failing to provide appropriate references to the record to support assertions of fact; and for violating Fed.R.App.P. 28(f) by failing to include an addendum setting forth the statutes referred to in the text." At oral argument he showed no good cause whatever, and his violations did result in exactly what the rules are designed to avoid. He vastly increased the efforts required by this court and by opposing counsel to understand and rule upon Tittel's myriad of claims. We therefore impose sanctions upon him as follows: He shall, forthwith, pay the sum of $500 to Appellees. See Kano v. National Consumer Coop. Bank, 22 F.3d 899, 900 (9th Cir.1994); Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1417 (9th Cir.1990), cert. denied, 498 U.S. 1109, 111 S.Ct. 1019, 112 L.Ed.2d 1100 (1991); Kalombo v. Hughes Market Inc., 886 F.2d 258, 259-60 (9th Cir.1989); see also Fed.R.App.P. 38; 28 U.S.C. § 1927.
 
 
 20
 AFFIRMED as to Appeal Nos. 93-16971 and 94-16562, with costs on the appeals awarded to appellees. REVERSED as to Appeal No. 95-16085, with the parties bearing their own costs on appeal. Maxim N. Bach shall pay $500.00 to Appellees as sanctions.
 
 
 21
 BOOCHEVER, Circuit Judge, concurring in part and dissenting in part:
 
 
 22
 I concur in sections 1, 4, 5, 6, and 7 of the memorandum disposition except for the award of costs on appeal. To the extent discussed below, I respectfully dissent from sections 2 and 3, which address Tittel's sexual discrimination and due process claims against the Browns Valley Irrigation District (District) and its board members (Defendants).
 
 A. Sexual Discrimination
 
 23
 Tittel argues that the district court erred in granting summary judgment in favor of Defendants on the 42 U.S.C. § 1983 claim in Tittel I. Tittel contends that there was sufficient evidence to permit a jury to decide whether Defendants denied her a cost of living increase on the basis of her sex, in violation of the Fourteenth Amendment's equal protection clause.
 
 
 24
 To establish a prima facie case of discrimination, "a plaintiff must offer evidence that gives rise to an inference of unlawful discrimination." Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1112 (9th Cir.1991). The plaintiff must prove facts that, absent explanation, lead to an inference that "it is more likely than not that such action was based upon" discriminatory criteria. Gay v. Waiters' & Dairy Lunchmen's Union, 694 F.2d 531, 538 (9th Cir.1982).
 
 
 25
 The evidence shows that all employees who received a cost of living increase were male, and Tittel, the only employee who did not receive such an increase, was female. Tittel therefore satisfies her burden of proving a prima facie case of sex discrimination, because this evidence, absent explanation, leads to an inference that it is more likely than not that Defendants' decision to deny the cost of living increase was based upon discriminatory criteria.
 
 
 26
 Where a plaintiff has presented a prima facie case of intentional discrimination, the defendants must produce evidence of legitimate, non-discriminatory explanations for the allegedly discriminatory action. Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.1994).
 
 
 27
 Defendants Smith and Mistler stated that they voted against the increase because they were dissatisfied with Tittel's job performance. Defendant Bordsen stated that he voted against the increase because he felt that Tittel was adequately compensated given the nature of her job. Although seemingly more appropriate to justify the denial of a merit increase, these explanations are legitimate and non-discriminatory reasons for denying a cost of living increase and therefore satisfy Defendants' burden.
 
 
 28
 Once Defendants have met their burden, to avoid summary judgment, the plaintiff must respond with "specific, substantial evidence" that the employer's explanation is a pretext for discrimination. Id. at 890 (quotation omitted).
 
 
 29
 Tittel first points to evidence showing that the board gave cost of living increases to every male employee but not to her. Although this evidence was sufficient to satisfy Tittel's burden of proving her prima facie case of sex discrimination, it is probably insufficient, by itself, to raise a genuine issue regarding Defendants' reasons for denying the increase. See Lindahl v. Air France, 930 F.2d 1434, 1437 (9th Cir.1991) ("[A] plaintiff cannot defeat summary judgment simply by making out a prima facie case."). See also Wallis, 26 F.3d at 890 ("[W]here the prima facie case consists of no more than the minimum necessary to create a presumption of discrimination ..., plaintiff has failed to raise a triable issue of fact" regarding pretext.).
 
 
 30
 Tittel also relies upon the deposition testimony of former District manager George Ward to establish that Defendants' explanations were pretextual. According to Ward's uncontradicted testimony, Bordsen said that "none of the women down at the county where he worked made th[e] kind of money" Tittel made. Ward also recalled that Mistler made a similar statement. These are paradigmatic statements of sexual discrimination and therefore support Tittel's contention that Defendants' explanations were pretextual.
 
 
 31
 Generally, a cost of living wage increase has no relationship to whether a person is employed in a clerical position or in some other capacity. Given that Defendants authorized a cost of living increase for every male field worker but not for Tittel, the lone female working for the District, and that two of the Defendants made discriminatory statements, I conclude that a reasonable jury could have found that Defendants' explanations were pretext for sexual discrimination. See Sischo-Nownejad, 934 F.2d at 1111 (9th Cir.1991) ("[W]hen th[e] evidence, direct or circumstantial, consists of more than the McDonnell Douglas presumption, a factual question will almost always exists with respect to any claims of non-discriminatory reason."). Accordingly, I find that the district court erred in granting summary judgment in favor of Defendants on Tittel's sexual harassment claim in Tittel I.
 
 B. Due Process Claim
 
 32
 Tittel contends that the district court erred in granting summary judgment in favor of Defendants on the procedural due process claim in Tittel II.
 
 
 33
 "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Board of Regents v. Roth, 408 U.S. 564, 568 (1972). When determining whether an employee has a property interest in a job, we look to "existing rules or understandings that stem from an independent source such as state law...." Id. at 577; see also Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 475 (9th Cir.1991) ("A person only has a constitutionally protected property interest ... if [s]he has a reasonable expectation or a legitimate claim of entitlement to it....") (internal quotes and citation omitted).
 
 
 34
 The majority holds that the provisions of the state civil service statute do not create a protectable property interest for Tittel. I agree. Tittel is exempt from the state civil service statute and therefore cannot benefit from its protections. See Cal. Const. art. VII, § 4(e). Provisions of the California Water Code, however, create a protectable property interest for Tittel.
 
 
 35
 Although "[e]very office, the term of which is not fixed by law, is held at the pleasure of the appointing power," Cal.Gov't Code § 1301, the California Water Code specifically provides that employees of the state's irrigation districts are "permanent employees" if they hold "positions which, in the judgment of the board, normally require more than six months employment in each year." Cal.Water Code § 21190. Tittel held a position which normally requires more than six months employment in each year. Consequently, she was a permanent employee under the Water Code.
 
 
 36
 Permanent employees "have a legitimate claim of entitlement, and thus a [protectable] property right, to continued public employment." McGraw v. City of Huntington Beach, 882 F.2d 384, 389 (9th Cir.1989) (finding that Huntington Beach personnel rules created protectable interest). See also Skelly v. State Personnel Board, 539 P.2d 774 (Cal.1975) (finding that State Civil Service Act created protectable interest). Cf. Williams v. Los Angeles City Dep't of Water & Power, 181 Cal.Rptr. 868 (Ct.App.1982) (holding that part-time noncivil service employee did not have a protectable interest). Moreover, the Water Code specifically provides that employees in an irrigation district containing 500,000 acres or more "shall hold their employment at the will of the board." Cal.Water Code § 22843. No similar provision applies to the District, which contains fewer than 500,000 acres. Thus, I conclude that Tittel, a "permanent employee" of the District, had a legitimate claim of entitlement to continued employment and did not hold her position at the will of the board.
 
 
 37
 Even assuming the Water Code created a protectable interest for Tittel, the majority concludes that Tittel waived that interest by signing the union contract which designated her an at will employee. The majority reaches this conclusion, because Tittel's union could negotiate "all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment...." Cal.Gov't Code § 3504. Nevertheless, the union could not waive Tittel's due process rights. See Phillips v. California State Personnel Bd., 229 Cal.Rptr. 502, 508-09 (Ct.App.1986). See also Miller v. California, 557 P.2d 557 (Cal.1977) (holding that statutory provision controlling terms and conditions of employment cannot be circumvented by purported contracts in conflict therewith); McMillen v. Civil Serv. Comm'n, 8 Cal.Rptr.2d 548, 551-52 (Ct.App.1992) (holding that union may agree to disciplinary rules different from ones which ordinarily apply so long as agreed to rules do not waive the members' due process rights). The at will provision of the union contract, which if effective would eliminate Tittel's property interest and resultant due process protections, therefore is invalid.
 
 
 38
 Because Tittel had a protectable interest in maintaining her job, the District could not terminate her employment without providing appropriate procedural safeguards. See McGraw v. City of Huntington Beach, 882 F.2d 384, 389-90 (9th Cir.1989); Skelly, 539 P.2d at 788-89. The District, however, did not provide such safeguards. Among other things, the District did not give Tittel the opportunity to appear before impartial decision makers in her post-termination hearing. See Phillips, 229 Cal.Rptr. at 508 (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985)). Accordingly, I find that the district court erred in granting summary judgment in favor of Defendants on Tittel's due process claim in Tittel II.
 
 C. Costs
 
 39
 I would not award costs on appeal, but would remand the issue of costs, including costs on appeal, pending the result of a trial on the sexual discrimination and due process claims.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because she does not claim that employment benefits were conditioned on sexual favors, Tittel's claim does not meet the requirements of quid pro quo sexual harassment. See Nichols v. Frank, 42 F.3d 503, 511 (9th Cir.1994)
 
 
 [2]
 According to George Ward's deposition, Bordsen said that none of the women who work as clerks in Yuba county make as much as Tittel. Mistler was of the same opinion
 
 
 [3]
 There are other defects in her claims, such as public employee immunity provisions. See Calif.Gov't Code § 820.2. Those need not be explicated at this time. See Kemmerer v. Fresno County, 200 Cal.App.3d 1426, 1435, 246 Cal.Rptr. 609, 615 (1988); Kayfetz v. California, 156 Cal.App.3d 491, 496-97, 203 Cal.Rptr. 33, 35-36 (1984)